UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON

| | |
|---|---|
| BART SPENCER, | |
| Plaintiff, | Civil Action No. 6:11-00128-KSF |
| v. | |
| ERIC D. WILSON, Warden, *et al.*, | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

***** ***** ***** *****

Bart Spencer is an inmate confined in the Springfield Medical Center in Springfield, Missouri. Spencer, proceeding without an attorney, has filed a complaint asserting constitutional claims pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). [R. 2] Spencer alleges that while confined at the United States Penitentiary-McCreary ("USP-McCreary"), located in Pine Knot, Kentucky, officers assaulted him and then placed him in a cell for days without water, proper sanitation, or medical care.

Because Spencer has been granted permission to pay the filing fee in installments and asserts claims against government officials, the Court conducts a preliminary review of his complaint. 28 U.S.C. §§ 1915(e)(2)(B), 1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997). Because the plaintiff is not represented by an attorney, the complaint is reviewed under a more lenient standard. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). At this stage the Court accepts Spencer's factual allegations as true and his legal claims are liberally construed in his favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). But the Court must dismiss a case at any time if it determines the action (a) is frivolous or malicious, (b) fails to state a claim upon which relief can be granted, or (c) seeks monetary damages

from defendants who are immune from such relief. 28 U.S.C. § 1915(e)(2). A complaint fails to state a claim unless its sets forth sufficient factual matters which, if accepted as true, would allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged; it is not enough to allege facts that are "merely consistent with" a defendant's liability. *Ashcroft v. Iqbal*, 552 U.S. 662, 678 (2009). Having reviewed the Complaint, the Court will require two defendants to respond to Spencer's excessive force claims but dismiss the remainder of his constitutional claims, and deny his two pending motions.[1]

## BACKGROUND

Spencer alleges that on August 21, 2009, eight of the defendants came to his cell, and that Lieutenant Baker ordered him to "cuff up" because he was being moved to another cell. Spencer alleges that Officer Cox opened the cell door, and, without warning, Lieutenant Terry Baker, Officer Reams, and an unknown officer hit him in the back and sides and slammed him into the wall. [R. 2, pp. 5-6] Spencer states that he was then told that he was being placed in a multi-purpose room, and that ". . . unless I ate, which I couldn't do, an [sic] they all knew of my eating disorder. I was put in a room with no water, no bunk, or toilet facilities for many days." [*Id.*, p. 6]

Spencer alleges that unidentified officers and Lieutenant Baker came to his room for days, saying "it" (presumably his confinement in the multi-purpose room) would end if he ate. [*Id.*] Spencer alleges that unidentified officers either denied him water or gave him water according to

---

[1] Spencer moves for default judgment because the defendants did not file a response within sixty days after he filed his complaint [R. 8] and requests an order compelling the defendants to respond to his complaint. [R. 9] The first motion is without merit: the sixty day response time required under Rule 12(a)(2) is triggered by *service* of the complaint, not the filing of it, and the Court has not ordered service of the complaint pending completion of this initial screening. The second motion is moot, the Court having ordered a response as described in this order.

their moods; denied him medical treatment for the injuries he sustained during the assault; denied him ice; failed to properly treat his eating disorder; punished and abused him because of his mental illness; and subjected him to "unnecessary and wanton infliction of pain and suffering." [*Id*.]

## DISCUSSION

Spencer's allegations fall into seven different categories, discussed below.

(1) **Excessive force**. Spencer alleges that Baker and Reams applied excessive force by slamming him into a wall, which is a claim of cruel and unusual punishment inflicted in violation of the Eighth Amendment to the United States Constitution. Spencer filed a grievance alleging that Reams and Baker "abused" him by slamming him into a wall, and then placed him in a holding cell with no bathroom or shower. [R. 2-2, pp. 2, 4, 6] Because this claim appears to be fully exhausted and states a viable claim, the Court will order defendants Baker and Reams to file a response to it. Because Spencer does not allege that any of the other six defendants applied excessive force against him, his claim will be dismissed with respect to each of them.

(2) **Placement in Segregation**. Spencer challenges his placement in the "multi-purpose" room for several days, alleging that Lieutenant Baker told him that "it" (presumably, his confinement in that room) would end "if I ate." [R. 2, p. 6] Regardless of whether Spencer was placed in administrative or disciplinary segregation, mere confinement in segregation does not constitute an atypical and significant hardship which violates either the Due Process Clause of the Fifth Amendment of the United States Constitution, or the Eighth Amendment of the United States Constitution. *Sandin v. Connor*, 515 U.S. 472, 486 (1995); *Minnifield v. Chandler*, 2007 WL 4302694, at *4-5 (W.D. Ky. 2007); *Sublett v. Vinson*, 2008 WL 237656, at *4-6 (W.D. Ky. 2008); *see also Sheley v. Dugger*, 833 F.2d 1420, 1428–29 (11th Cir. 1987) (placement in "administrative

3

segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment," *citing Hutto v. Finney*, 437 U.S. 678, 686 (1978)). This claim will be dismissed for failure to state a claim upon which relief can be granted.

(3)     **Conditions of Confinement in Segregation**.  Spencer alleges that he was placed in a room with no water, bunk or toilet facilities for several days, a claim he appears to have exhausted. [R. 2-2, p. 2]  To prevail on a conditions-of-confinement claim, a prisoner must show that he suffered an objective, sufficiently serious deprivation (*i.e.*, one that results in the denial of the minimal civilized measure of life's necessities) and that prison officials were deliberately indifferent to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994); *Bellamy v. Bradley*, 729 F.2d 416, 419 (6th Cir.1984).

Spencer's complaint about being denied access to a bathroom does not rise to the level of an Eighth Amendment violation, as a short term or temporary placement in a cell without its own bathroom facilities does not state an Eighth Amendment claim. *Dellis v. Corrections Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Hartsfield v. Vidor*, 199 F.3d 305, 310 (6th Cir. 1999); *Abdur–Reheem–X v. McGinnis*, 1999 WL 1045069, at *2 (6th Cir. 1999) (as to lack of flushable toilet); *Knop v. Johnson*, 977 F.2d 996, 1013 (6th Cir. 1992) (same).  For example, in *Laster v. Pramstaller*, 2011 WL 4506956, (E.D. Mich. 2011), the prisoner alleged that the defendants failed to provide him with handicap accessible showers and toilets for six months, and that some of the prison staff members forced him to stay in a cell for four days with no running water or flushable toilet, and poor air circulation.  The court held that the prisoner failed to state an Eighth Amendment claim because he did not allege that he faced risk of serious harm by the defendants' failure to provide him with handicap-accessible toilets and showers for a six month period. *Id.* at *12.

4

Nor does temporary placement in a cell without running water violate the Eighth Amendment. *Diaz v. Cumberland County Jail*, 2010 WL 3825704, at *4 (D.N.J. 2010); *Gibert v. Anderson County Sheriff's Office*, 2007 WL 328840, at *8 (D.S.C. 2007) (collecting cases). Prisons are not required to provide, nor can prisoners expect to receive, "the amenities, conveniences and services of a good hotel." *Harper v. Kentucky Dept. of Corrections*, 2007 WL 204002, at *3 (E.D. Ky. 2007) (citation omitted). Spencer's allegation that he was denied a bed for "many days" fails to state a claim for relief absent any allegation that he suffered any concrete physical injury as a result. *Grissom v. Davis*, 55 F. App'x. 756, 757 (6th Cir. 2003); *Shaw v. Mangione*, 27 F. App'x. 407, 407 (6th Cir. 2001); *Jones v. Toombs*, 1996 WL 67750, at *1 (6th Cir. 1996) ("The defendants did not violate [the plaintiff's] Eighth Amendment rights by depriving him of a mattress for a two week period."). This claim will likewise be dismissed for failure to state a cognizable claim.

(4)     **Denied Medical Assessment/Treatment for Physical Injuries**. Spencer alleges that after he was forcibly removed from his cell, he was refused medical treatment for the injuries he sustained as a result of the alleged excessive force. This claim will be dismissed for two reasons.

First, it is clear from the face of the Complaint and exhibits attached to it that Spencer did not administratively exhaust this claim. Spencer indicates that he filed five inmate grievances. [R. 2, pp. 8-9] In two of those, he alleged that he had been denied proper medical treatment for his anorexia/eating disorder. [R. 2-2, p. 1, 19] Spencer did not, however, file a grievance complaining that he had been denied medical treatment for injuries he allegedly suffered after the cell extraction episode of August 21, 2009. Prisoners must administratively exhaust all administrative remedies before filing suit asserting claims relating to the conditions of their confinement. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). A court may dismiss a claim at the initial

screening stage where it is apparent from the face of the complaint that the prisoner did not satisfy this requirement. *See Clifford v. Louisiana*, 2008 WL 2754737, at *3 (M.D. La. 2008); *Whitaker v. Gannon*, 2007 WL 2744329, at *2 (S.D. Ohio 2007).

Second, this claim fails on the merits because Spencer does not indicate that any of the named defendants were personally involved in the denial of medical care for his injuries; rather, he alleges only that he was in pain from the injuries he sustained. A plaintiff must allege that the named defendant performed the acts that resulted in the deprivation of his constitutional rights. *See Rizzo v. Goode*, 423 U.S. 362, 375-76 (1976); *Bivens*, 403 U.S. at 390 n. 2; *Williams v. Mehra*, 135 F.3d 1105, 1114 (6th Cir. 1998). The plaintiff has the burden of pleading facts that, if true, will support his claims that the defendants violated his constitutional rights. *Brock v. Hamblen County Det. Ctr.*, 2010 WL 4963012, at *4 (E.D. Tenn. 2010). While *pro se* litigants are entitled to some degree of leniency, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court is not required to engage in unbridled speculation as to the nature or object of his claims. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008); *Kamppi v. Ghee*, 2000 WL 303018, at *1 (6th Cir. 2000).

  (5)  **Denial of Water.** Spencer alleges that for an unspecified period of time, he had to beg for water, and that it was up to unidentified USP-McCreary officials to decide if they would provide him with it. While water certainly qualifies as a basic necessity of life, as with his prior claim Spencer has made no allegation that any named defendant was personally responsible for but refused to provide him with such sustenance. Such vague and conclusory allegations lack facial plausibility because the plaintiff has not "plead[ed] factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must therefore be dismissed.

(6) **Denial of Medical Treatment for a Psychological Eating Disorder.** Spencer alleges that he was denied proper medical treatment for anorexia, an eating disorder from which he suffered for many years.[2] This claim will be dismissed for several reasons.

First, Spencer failed to identify which, if any, of the defendants allegedly denied him proper medical treatment. That failure prevents the Court from determining which, if any, of the named defendants should be served.

Second, to the extent that Spencer may be claiming that former warden Wilson, Assistant Wardens Smith and McCloud, and HSA Gregory and Jones, denied him proper medical treatment for his anorexia, he fails to state a claim. These defendants serve in administrative capacities within the prison system - they are not treating physicians, and hence are not personally involved with providing medical care to prisoners, and lack authority to override the treating physician's decisions setting a prescribed course of treatment for prisoners. *Estate of Young v. Martin*, 70 F. App'x 256, 260-61 (6th Cir. 2003) (complaints about the medical care an inmate received did not establish personal involvement by a warden); *Brock v. Wright*, 315 F.3d 158 (2d Cir. 2003) (warden's lack of medical training warranted reliance upon medical director's trained medical decisions regarding prisoner's care); *Stewart v. Murphy*, 174 F.3d 530, 536 (5th Cir. 1999); *Camberos v. Branstad*, 73

---

[2] Spencer filed two administrative remedies concerning this issue. In Administrative Remedy No. 560913, Spencer alleged that because USP-McCreary's Psychology Services was not staffed with a person with specialty training in eating disorders, he was denied proper medical treatment for his eating disorder. [R. 2-3, pp. 1, 2, 4, and 5] In Administrative Remedy No. 575275, Spencer alleged that by refusing to tube-feed him, USP-McCreary medical staff members were deliberately indifferent to his eating disorder. [R. 2-2., pp. 18-24]

F.3d 174, 176 (8th Cir. 1995); *Warren v. Epps*, 2011 WL 3349829, at *6, (S.D. Miss. 2011); *McIntosh v. Beighley*, 2011 WL 1364208, at *3 (S.D. Ind. 2011).

Third, to the extent that Wilson, Smith, McCloud, Gregory, and Jones may have held supervisory administrative positions, liability cannot be imposed on them for the decisions of subordinate employees under the doctrine of *respondeat superior*. *Ashcroft*, 556 U.S. at 677; *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Nor is merely denying a grievance sufficient to impose personal liability upon a prison administrative official. *Shehee*, 199 F.3d at 300; *Alder v. Corr. Medical Services*, 73 F. App'x. 839, 841 (6th Cir. 2003).

Fourth and finally, the documents and medical records attached to the complaint reveal that none of the defendants were deliberately indifferent to Spencer's serious medical needs. The Eighth Amendment is violated only where a prison official is actually aware of the prisoner's medical needs and consciously chooses, through action or inaction, to disregard a serious risk to the inmate's health. *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010). Allegations that merely state or suggest that the official was negligent in diagnosing or treating a medical condition does not state a viable claim of medical mistreatment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

On June 29, 2009, Dr. Richard Ramirez examined and evaluated Spencer, who had lost 40 pounds and refused to eat, and diagnosed him as having Axis II Antisocial Personality Disorder, lumbar spondylosis with myelopathy,[3] and an unspecified Axis I eating disorder. [R. 2-2, pp. 28-29] During that session, Ramirez noted Spencer saying that when he had previously been confined in

---

[3] Spondylosis is defined as any of several degenerative diseases of the spine. *Webster's Medical Dictionary*, New Edition, p. 711 (2006). Myelopathy is defined as any disease or disorder of the spinal cord or bone marrow. *Id*. at p. 481.

8

FCI-Butner, a federal prison in North Carolina, he had been "tube-fed." [*Id*., p. 28] Spencer then began a self-declared hunger strike, refusing to eat solid food. [*Id*., p. 30]

Between October 2009 and January 2010, Spencer repeatedly refused the medical evaluation and treatment offered to him, frequently demanding to be tube-fed. *See* "Medical Treatment Refusals," [*Id*., pp. 31-36; pp. 47-50] In February 2010, the prison medical staff began force-feeding Spencer through a nasal feeding tube. *See* "Clinical Encounter-Administrative Note," [*Id*., p. 25]; Eichenlaub Response to BP-10 appeal, [*Id*., p. 22].

On August 26, 2010, the prison medical staff transferred Spencer to FMC-Springfield for intensive medical management. *See* Watts Response to BP-11 appeal, [*Id*., p. 19] The Springfield medical staff continued to follow hunger strike protocols until August 31, 2010, at which time Spencer agreed to eat cold foods. [*Id*.] The Springfield medical and psychology staff continued working with Spencer to help him regain his health, and by November 5, 2010, his weight had increased to 163 pounds, up from 111 pounds on August 31, 2010.

Based on these facts, the prison staff actively counseled Spencer and treated his eating disorder as much as Spencer would permit. On numerous occasions the USP-McCreary medical staff attempted to continue treating Spencer, but he repeatedly refused the medical treatment, and acknowledged in writing the adverse consequences of doing so. The USP-McCreary medical staff transferred Spencer to FMC-Springfield for intervention and treatment when he continued to refuse to eat solid food. Such repeated and ongoing efforts to address Spencer's self-inflicted medical condition and eating disorder is the antithesis of deliberate indifference.

Spencer does not allege that he was denied any medical treatment for his eating disorder, he alleges only that he desired a *different* form of treatment, *i.e.*, to be fed through a nasal tube. "Where

9

a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976); *see*, *e.g.*, *Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995); *Simpson v. Ameji*, 57 F. App'x 238, 239 (6th Cir. 2003). A difference of opinion between a prisoner and the prison medical staff as to the nature and extent of treatment does not qualify as deliberate indifference under the Eighth Amendment. *Westlake*, 537 F.2d 860, n.5; *see also Wilson v. Wilkinson*, 2003 WL 1795812, at *1 (6th Cir. 2003); *Wooley v. Campbell*, 63 F. App'x 789, 790 (6th Cir. 2003); *Durham v. Nu'Man*, 97 F.3d 862, 869 (6th Cir. 1996); *Sharpe v. Patton*, 2010 WL 227702, at *11 (E.D. Ky. 2010); *Alexander v. Federal Bureau of Prisons*, 227 F. Supp.2d 657 (E.D. Ky. 2002).

Spencer's disagreement with the prison medical staff's refusal to tube-feed him is, at best, a claim that sounds in professional malpractice or negligence, not deliberate indifference. Medical malpractice is not an Eighth Amendment violation. Therefore, Spencer fails to state a cognizable Eighth Amendment deliberate indifference claim as to his eating disorder. 28 U.S.C. § 1915(e)(2)(ii).

(7) **Filing of False Disciplinary Charges**. Spencer alleged that he was "punished an [sic] abused because of my mental illness. . . ." [R. 2. p. 6] On November 5, 2009, Senior Officer "J." Ross filed an Incident Report against Spencer, charging him with "Refusing to Accept a Program Assignment" in violation of a BOP Code No. 306. Spencer alleged that Ross charged him with the offense because he (Spencer) was mentally ill; that Ross knew that the disciplinary charge was false; and that Ross knew that the charge would later be dismissed.

The Unit Disciplinary Committee found Spencer guilty of the infraction and revoked his commissary privileges for thirty days. [R. 2-3, p. 40] Spencer appealed, and on September 9, 2010,

the BOP Central Office informed Spencer that the Incident Report had been expunged and removed from his Chronological Disciplinary Record, but explained that by filing the Incident Report, the reporting staff member complied with internal BOP policies concerning inmate discipline matters, and that the subsequent expunction of the Incident Report was not evidence of staff misconduct. [*Id.*, p. 31] Spencer's claim alleging the filing of a false disciplinary charge fails for two reasons.

First, a Fifth Amendment procedural due process claim depends upon the existence of a constitutionally cognizable liberty or property interest with which the government has interfered. *Mitchell v. Horn*, 318 F.3d 523, 531 (3rd Cir. 2003); *Guerra v. Scruggs*, 942 F.2d 270, 277 (4th Cir. 1991). A prison disciplinary proceeding does not give rise to a protected liberty interest unless the restrictions imposed constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. at 484. The loss of commissary privileges, especially for a short term, does not constitute an atypical and significant hardship in the context of prison life, because inmates have no federal constitutional right to purchase items from a commissary. *Dotson v. Calhoun County Sheriff's Department*, 2008 WL 160622, at *4 (W.D. Mich. 2008); *Tokar v. Armontrout*, 97 F.3d 1078, 1083 (8th Cir.1996) ("we note that we know of no constitutional right of access to a prison gift or snack shop."); *Hopkins v. Keefe Commissary Network Sales*, 2007 WL 2080480, at *5 (W. D. Pa. 2007).

Second, the act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights. *See Freeman v. Rideout*, 808 F.2d 949, 952-53 (2d Cir. 1986) ("the mere filing of [a false] charge itself" does not constitute a cognizable claim under § 1983 so long as the inmate "was granted a hearing, and had the opportunity to rebut the unfounded or false charges"). In this case, Spencer was granted a UDC hearing at which he had an opportunity to rebut the charge filed

11

against him. Spencer did not allege any procedural infirmities in connection with the UDC hearing. Spencer successfully had the Incident Report expunged from his disciplinary record, but under *Freeman*, he states no actionable Fifth Amendment claim based on Ross allegedly filing false charges against him in the Incident Report. *See Freeman*, 808 F.2d at 952-53; *see also McMillan v. Fielding*, 136 F. App'x. 818, 820 (6th Cir. 2005) (where the prisoner was sanctioned with 10 days in lock up and the loss of package privileges, the disciplinary hearing afforded him a sufficient means of challenging allegedly false disciplinary charges brought against him); *Vaughn v. Wilson*, 1987 WL 44490, at *1 (6th Cir. 1987) (affirming dismissal of a 42 U.S.C. § 1983 civil rights action where the district court determined that the prisoner-plaintiff lacked a constitutional right to the expungement of information in his prison file). Spencer's allegation that false disciplinary charges were intentionally filed against him in violation of the Fifth Amendment will be dismissed for failure to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2)(ii).

## CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

1. Spencer's motion for default judgment [R. 8] is **DENIED**.

2. Spencer's motion to compel the defendants to answer the complaint [R. 9] is **DENIED** as **MOOT**.

3. Spencer's claims related to (a) his placement in segregation; (b) the conditions of his confinement in segregation; (c) medical treatment of his injuries received on August 21, 2009; (d) the denial of water and other beverages; (e) medical treatment of his anorexia/eating disorder; and (f) the filing of an allegedly false disciplinary charge against him, are **DISMISSED WITH PREJUDICE**.

4. Spencer's excessive force claims against all defendants, except defendants Terry Baker and Reams, are **DISMISSED WITH PREJUDICE.**

5. Spencer's constitutional claims against the following eighteen USP-McCreary Defendants, Eric D. Wilson, former Warden; "McCloud," Assistant Warden; "Smith," Assistant Warden; "Willard," Psychologist; Millisa Gregory, Health Services Administrator; "Jones," Health Services Administrator; "A." Bryant, Physician's Assistant; Richard Ramirez, Physician;"Rush," Head of Psychology; "Reinwald," Psychologist; "Baker," Physician's Assistant; "Caldell," Physician's Assistant; "Boggs," Head of Education; "R." Woods, Case Worker; "W." Wood, Case Worker; "Anderson," Case Worker; "J." Tucker, Case Worker; and "S." Sims, Counselor, are **DISMISSED WITH PREJUDICE** and the Clerk of the Court shall note in the CM/ECF cover sheet that these defendants are **TERMINATED** from this action.

6. Defendants Lieutenant Terry Baker and Correctional Officer Reams shall respond to Spencer's Eighth Amendment excessive force claims, and the Clerk of the Court shall issue summons for Terry Baker and Correctional Officer Reams in their individual capacities.

7. For defendants Baker and Reams, the Clerk of the Court shall prepare "Service Packets" consisting of the following documents:

        a. Completed summons forms;

        b. Complaint [R. 2] and all attachments thereto;

        c. This Memorandum Opinion and Order; and

        d. Completed United States Marshals Service ("USMS") Forms 285 for each defendant to be served.

If the Clerk is unable to accurately complete any of the documents described above, the Clerk shall set forth the reason in a docket entry.

8. For both defendants to be served, the Clerk shall prepare three (3) Service Packets to be provided to USMS in Lexington, Kentucky, addressed as follows:

    a. to the Civil Process Clerk at the Office of the United States Attorney for the Eastern District of Kentucky;

    b. to the Office of the Attorney General of the United States in Washington, D.C.; and

    c. to Baker and Reams at the United States Penitentiary - McCreary in Pine Knot, Kentucky.

9. The London Clerk shall send by certified mail the required Service Packets for both of the defendants to USMS in Lexington, Kentucky, and enter the certified mail receipt into the record, noting in the docket the date that the Service Packet was delivered to the USMS.

10. The USMS shall serve both of the identified defendants by:

    a. Sending a Service Packet for both defendants by certified or registered mail to the Civil Process Clerk at the Office of the United States Attorney for the Eastern District of Kentucky;

    b. Sending a Service Packet for both defendants by certified or registered mail to the Office of the Attorney General of the United States in Washington, D.C.; and

    c. Personally serving a Service Packet upon Baker and Reams at the United States Penitentiary - McCreary in Pine Knot, Kentucky, through arrangement with the Bureau of Prisons.

11.     Spencer must advise the London Clerk's Office of any change in his current mailing address.  ***Failure to do so may result in dismissal of this case.***

12.     Spencer must communicate with the Court solely through notices or motions filed with the London Clerk's Office.

12.      For every further pleading or other document he wishes to submit to the Court, Spencer shall serve upon each defendant, or, if appearance has been entered by counsel, upon each attorney, a copy of the pleading or other document.  Spencer shall send the original papers to be filed with the Clerk of the Court together with a certificate stating the date a true and correct copy of the document was mailed to each defendant or counsel.

13.     The Court will disregard any document which has not been filed with the Clerk of the Court; which has been filed but fails to include the certificate of service of copies; or which has been sent directly to the Judge's chambers.

This June 8, 2012.



Signed By:
*Karl S. Forester*  KSF
United States Senior Judge

15